STATE OF CONNECTICUT *v.* TROY LITTLE
(AC 25590)

Dranginis, DiPentima and Stoughton, Js.

Argued February 9—officially released May 3, 2005

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (defendant).

*Denise B. Smoker*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John Waddock*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

STOUGHTON, J. The defendant, Troy Little, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes § 53a-55a and carrying a pistol without a permit in violation of General Statutes § 29-35 (a). On appeal, the defendant claims that (1) the trial court improperly marshaled the evidence in

favor of the state and (2) the prosecutor committed misconduct that resulted in a denial of his due process right to a fair trial. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On the evening of August 16, 2000, the defendant was walking with four young women along the sidewalk on Lilac Street in New Haven. The victim, Kishawn Council, drove a black car alongside the group as it walked. There were three other men in the victim's car. The victim called out to the women to get their attention, and the defendant began to stare into the victim's car. The victim asked the defendant, "What you looking at?" and the defendant and the victim began to argue. The victim's car continued to follow alongside the group as the two men argued.

When the defendant and the women reached the corner of Lilac and Newhall Streets, they turned right and continued down Newhall Street. The victim followed the group and then stopped his car on Newhall Street. The victim got out of his car and approached the defendant. The defendant picked up a stick and continued to argue with the victim. The victim punched the defendant in the face, and the defendant tried to hit the victim with the stick. The victim began to choke the defendant to the point where the defendant was "on his tippy-toes about to come off his feet." The two men then fell to the ground as the defendant tried to break free.

A bystander broke up the fight and separated the two men. The victim returned to his car, and the defendant ran across the street to a friend who was standing nearby. The defendant yelled to his friend, asking him for a gun. The defendant's friend initially refused but gave a nine millimeter black handgun to the defendant after he saw the victim reach inside the car. Armed with the gun, the defendant started to run after the

victim. The defendant chased the victim in between two houses on Lilac Street and then fired at the victim from the driveway between the two houses.

The next morning, one of the occupants of the house at 25 Lilac Street found the victim's body on the back steps of the house. The cause of death later was determined to be a gunshot wound to the jaw, which traveled through the victim's neck causing extensive bleeding. The defendant surrendered himself to the police on April 1, 2001, and he was arrested. He was charged with murder and carrying a pistol without a permit. A jury found the defendant guilty of the lesser included offense of manslaughter in the first degree with a firearm and of carrying a pistol without a permit. Additional facts will be set forth as necessary.

I

The defendant first contends that during its charge to the jury, the court improperly marshaled the evidence against him and in favor of the state.[1] The defendant

---

[1] The court instructed the jury, in part, as follows: "In this case, the state contends that it has shown a motive for the defendant to shoot [the victim]. More specifically, it claims that there was evidence presented which, if believed, demonstrated that the defendant had a motive to cause the death of another person, that being [the victim], that he intended to cause the death of [the victim], that in consequence of acting on that intent, he did, in fact, cause the death of [the victim]. In essence, the state contends that the evidence showed that on the evening of August 16, 2000, the defendant and [the victim] became involved in a verbal disagreement. This disagreement developed, according to the state, into a physical altercation between the two, which [the victim] got the better of. The state further claims that in response to these events, the defendant went and retrieved a gun and thereafter chased and shot [the victim]. All of this evidence was introduced by the state to establish and corroborate what the state claims was the defendant's motive to commit the crimes charged here.

"A jury should examine the conduct of an accused in light of the surrounding circumstances, and knowing how the human mind ordinarily operates, the jury should try to determine whether, on all the evidence, it can reasonably be inferred that the defendant had a motive to commit the crime. If the existence of a motive can be reasonably inferred, that may be evidence tending to prove his guilt. If no motive can be inferred, that may well tend to raise a reasonable doubt as to the guilt of the accused, or it may not

argues that the only time the court referred to the evidence was during its charge on motive, and that the court ignored his evidence and his defense theory throughout the jury charge. He claims that the court, thus, improperly endorsed the state's case, thereby depriving him of a fair trial. We disagree.

The defendant did not object to the court's charge and now seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989). Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error "only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original.) Id., 239–40. We agree with the defendant that the record is adequate for review and that the claim is of constitutional magnitude. We therefore must determine whether the alleged constitutional violation clearly exists.

This court has stated: "A trial court has broad discretion to comment on the evidence adduced in a criminal trial. . . . A trial court often has not only the right, but also the duty to comment on the evidence. . . . The purpose of marshaling the evidence . . . is to provide

raise such a doubt. However, I must also instruct you that even a total lack of evidence as to motive would not necessarily raise a reasonable doubt as to the guilt of the defendant so long as there is other evidence produced that is sufficient to prove guilt beyond a reasonable doubt. For if the state has proven beyond a reasonable doubt that the defendant committed the crimes, then you must find him guilty regardless of how intellectually satisfying it might have been to know what motivated him. Now, whether a motive can be found in this case is a determination that you should make and, thereafter, decide the weight of such motive or absence thereof . . . ."

a fair summary of the evidence, and nothing more; to attain that purpose, the [trial] judge must show strict impartiality. . . . To avoid the danger of improper influence on the jury, a recitation of the evidence should not be so drawn as to direct the attention of the jury too prominently to the facts in the testimony on one side of the case, while sinking out of view, or passing lightly over, portions of the testimony on the other side, which deserve equal attention. . . .

"On review, we do not evaluate the court's marshaling of the evidence in isolation. Rather, [t]o determine whether the court's instructions were improper, we review the entire charge to determine if, taken as a whole, the charge adequately guided the jury to a correct verdict. . . . The pertinent test is whether the charge, read in its entirety, fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . [I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Thompson*, 81 Conn. App. 264, 282, 839 A.2d 622, cert. denied, 268 Conn. 915, 847 A.2d 312 (2004).

At trial, the defendant's theory of defense was that there were inconsistencies in the testimony of the state's witnesses, that the state's witnesses were not credible, that the forensic evidence did not support the state's case and that the state had not proved its case. The trial court instructed the jury that it was the finder of fact and, therefore, to the extent that the court referred to the facts, if the jury's recollection of the facts was different, the jury's recollection would control. The court informed the jury that it was the sole judge of the facts and that it was to form its own conclusion from the evidence as to what the facts were. The court instructed the jury that the evidence consisted of the sworn testimony of the witnesses, both on direct exami-

nation and cross-examination, regardless of who called the witness, along with the exhibits. It instructed the jury on the presumption of innocence and the burden of proof. The court also instructed the jury on the credibility of witnesses and on various factors relating to the determination of the credibility and the weight, if any, to be given to the testimony of witnesses.

We have reviewed the charge in its entirety and conclude that the court did not unfairly focus on the state's case. There were few references to specific evidence during the charge. One of the few references to the state's evidence occurred during the court's instruction regarding motive. The court explained that the prosecution contended that this evidence, if believed, demonstrated that the defendant had a motive to cause and intended to cause the death of the victim. The court left it to the jury to determine whether, on all the evidence, the defendant had a motive to commit the crime. Although the court did not refer to any defense specifically, it did inform the jury that the state had the burden of proving the defendant's guilt beyond a reasonable doubt. What little reference the court made to the state's evidence was prefaced by the court's instructions about the role of the jury and was proportional to the quantum of evidence offered at trial. The court explained to the jurors at the beginning of its instruction as follows: "[Y]ou are the finders of fact and, therefore, to the limited extent, and it will be limited, that [the court] refer[s] to any of the evidence in the case or the facts that the state or the defense are alleging, it's not [the court's] recollection that controls, it's yours that controls. If you recollect the evidence differently than [the court], it's your recollection that controls, not [the court's]."

After reviewing the charge in its entirety, we conclude that the court did not marshal the evidence so as to unduly prejudice the defendant or deprive him of his

right to a fair trial. Accordingly, the defendant's claim fails under the third prong of *Golding.*

## II

The defendant also claims that several comments made by the prosecutor during closing argument constituted prosecutorial misconduct. First, the defendant contends that the prosecutor improperly appealed to the jury's passions, emotions and prejudices. Second, the defendant claims that the prosecutor maligned his theory of defense and impugned the integrity and role of defense counsel.[2] We disagree.

We first set forth the applicable standard of review. "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, and not the culpability of the prosecutor. . . . In determining whether the defendant was denied a fair trial [by virtue of prosecutorial misconduct] we must view the prosecutor's comments in the context of the entire trial." (Internal quotation marks omitted.) *State* v. *Rizzo,* 266 Conn. 171, 245–46, 833 A.2d 363 (2003). In other words, "[i]t is not the prosecutor's conduct alone that guides our inquiry, but, rather, the fairness of the trial as a whole." (Internal quotation marks omitted.) *State* v. *Ceballos,* 266 Conn. 364, 376, 832 A.2d 14 (2003).

"[I]n analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process

---

[2] In his brief, the defendant mentions that the prosecutor also acted improperly by bolstering the credibility of a witness based on prejudicial facts not in evidence. The defendant is not entitled to review of this claim because he has not adequately briefed it. See *Carey* v. *Commissioner of Correction,* 86 Conn. App. 180, 185 n.6, 860 A.2d 776, cert. denied, 272 Conn. 915, 866 A.2d 1283 (2004).

right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial . . . ." (Internal quotation marks omitted.) *State* v. *Coney,* 266 Conn. 787, 808, 835 A.2d 977 (2003).

In cases where incidences of alleged prosecutorial misconduct were not objected to at trial, this court must apply the factors set out by our Supreme Court in *State* v. *Williams,* 204 Conn. 523, 540, 529 A.2d 653 (1987). See *State* v. *Stevenson,* 269 Conn. 563, 572–76, 849 A.2d 626 (2004). "[A] reviewing court must apply the *Williams* factors to the entire trial, because there is no way to determine whether the defendant was deprived of his right to a fair trial unless the misconduct is viewed in light of the entire trial." Id., 573. "In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. Among them are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case." (Citations omitted.) *State* v. *Williams,* supra, 540. In addition, defense counsel's failure to "object to one or more incidents of misconduct must be considered in determining whether and to what extent the misconduct contributed to depriving the defendant of a fair trial . . . ." *State* v. *Stevenson,* supra, 576.

A

The defendant's first claim of misconduct arises from comments made by the prosecutor during closing argu-

ment. At the beginning of his closing argument, the prosecutor remarked: "You also have . . . three individuals disputing [the defendant's] claim that it was [the victim] chasing him and not the other way around. All three of those individuals told you that it was [the defendant], the man who had the motive, the man [who] now had the means, the man who took advantage of the opportunity at this point to *chase and track down* essentially [the victim]." (Emphasis added.) Shortly thereafter, near the end of his closing argument, the prosecutor urged the jury "to recall the fact that the state claims the defendant had a motive, a clear motive, to shoot and kill [the victim]; the fact that he purposely sought out and obtained a deadly weapon to accomplish that; [and] the fact that he chased, in effect, *hunted down*, [the victim] over a block and a half . . . ." (Emphasis added.) Defense counsel did not object to these remarks at the time.

The defendant claims that these remarks were improper because they suggested that he considered the victim as nothing more than an animal and, therefore, appealed to the jury's emotions. "It is well settled that [a] prosecutor may not appeal to the emotions, passions and prejudices of the jurors. . . . When the prosecutor appeals to emotions, he invites the jury to decide the case, not according to a rational appraisal of the evidence, but on the basis of powerful and irrelevant factors which are likely to skew that appraisal. . . . Therefore, a prosecutor may argue the state's case forcefully, [but] such argument must be fair and based upon the facts in evidence and the reasonable inferences to be drawn therefrom. . . . Nor should a prosecutor express his opinion, directly or indirectly, as to the guilt of the defendant. . . . Such expressions of personal opinion are a form of unsworn and unchecked testimony, and are particularly difficult for the jury to ignore because of the prosecutor's special position."

(Citation omitted; internal quotation marks omitted.) *State* v. *Sargent*, 87 Conn. App. 24, 38, 864 A.2d 20, cert. denied, 273 Conn. 912, 870 A.2d 1082 (2005). Nevertheless, "[w]hen making closing arguments to the jury . . . [c]ounsel must be allowed a generous latitude in argument, as the limits of legitimate argument and fair comment cannot be determined precisely by rule and line, and something must be allowed for the zeal of counsel in the heat of argument." (Internal quotation marks omitted.) *State* v. *John L.*, 85 Conn. App. 291, 296, 856 A.2d 1032, cert. denied, 272 Conn. 903, 863 A.2d 695 (2004).

In this case, the prosecutor's comments were isolated remarks made during closing argument. Moreover, the prosecutor's comments were made in support of the claim that the evidence supported the charge of murder. The jury later was instructed by the court regarding the lesser included offense of manslaughter. There was evidence that the defendant had chased the victim down the street. The two brief comments by the prosecutor, made in close succession, were not unreasonable. The remarks were based on the evidence, and we conclude that, under the circumstances, they were not improper, and they did not deprive the defendant of a fair trial.

B

The defendant's second claim of misconduct arises from comments made by the prosecutor during his rebuttal argument. During his closing argument, defense counsel argued, in effect, that the defendant would not have used a stick to defend himself if he had a gun available to him, nor would he have allowed the victim to beat and to choke him. Defense counsel argued that there was a fight, that the defendant was not the aggressor and that the defendant got the worst of it. In rebuttal, the prosecutor stated: "I guess [the victim] got what he deserved. [Defense counsel] was taking great pains to point out the fight that took place

. . . describing in great detail how [the defendant] was being choked up on his tippy-toes [and] almost spitting. So, I guess that is to ask you folks to say, 'You know what? He deserved to get shot.' There is no valid self-defense claim in this case." The defendant contends that because he was not making an argument for self-defense, the prosecutor's comments were improper and impugned the integrity and role of defense counsel by suggesting that the defense wanted the jury to disregard the law and implying that the defense was one of jury nullification.

"It is improper for a prosecutor to denigrate the function of defense counsel. . . . [T]he prosecutor is expected to refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel." (Citation omitted; internal quotation marks omitted.) *State* v. *Holliday*, 85 Conn. App. 242, 263, 856 A.2d 1041, cert. denied, 271 Conn. 945, 861 A.2d 1178 (2004). "Closing arguments of counsel, however, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. . . . [S]ome leeway must be afforded to the advocates in offering arguments to the jury in final argument. . . . [C]ounsel must be allowed a generous latitude in argument . . . ." (Internal quotation marks omitted.) *State* v. *Williams*, 81 Conn. App. 1, 16–17, 838 A.2d 214, cert. denied, 268 Conn. 904, 845 A.2d 409 (2004).

We conclude that, when read in context, the challenged remarks fell within the bounds of proper commentary. The prosecutor's remarks neither belittled the theory of the defense nor impugned the role of defense counsel. The comments merely reminded the jury that self-defense was not an issue in the case and properly addressed issues raised by defense counsel. We do not believe that the prosecutor's comments suggested that he was asking the jury to disregard the law or to engage

in jury nullification. We conclude that the remarks were not improper, and they did not deprive the defendant of his right to a fair trial.

The judgment is affirmed.

In this opinion the other judges concurred.