Lynn TAYLOR, Appellant,

v.

The STATE of Texas, Appellee.

No. 51775.

Court of Criminal Appeals of Texas.

May 18, 1977.

Qlo Crumm, Amarillo, for appellant.

Randall L. Sherrod, Dist. Atty. and Richard L. Wilcox, Asst. Dist. Atty., Canyon, Jim D. Vollers, State's Atty., and David S.

McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

Lynn Taylor appeals from a conviction for false imprisonment, a third degree felony under V.T.C.A., Penal Code, Section 20.02(c).[1]

He contends that the evidence is insufficient to support the conviction and there was reversible error during the prosecutor's arguments to the jury. We overrule both contentions and affirm.

On the evening of January 25, 1975, at approximately 7:45 p.m., Richard James, the manager of a Safeway store in Amarillo, observed three men enter. The three took a "buggy" and started to shop. Around 8:45 p.m., James looked up from his desk in the office and noticed that they were still there but had split up and gone to different areas of the store. He noticed that the buggy was only partially filled and knew that they had been in the store an exceptionally long time for grocery shopping. They left the store at 9:05 p.m.

James testified that the store meat locker was required to be kept at a temperature between 30 and 38 degrees. The Health Department made periodic checks and only recently found it in compliance. He also stated that the locker door was equipped with a safety feature to prevent someone from being trapped therein, an inside release mechanism.

Gloria Currie, on duty at the checkout stand the night of the offense, testified that the three men appeared to be watching her the entire time they were in the store. One of the three kept trying to get her to go back to the freezer area. She was so uneasy she notified James. Currie stated that the three men left the store without buying anything. Their partially filled cart had been left near the frozen food section near the freezer. Two knives were on top of the cart; one had been removed from its package.

Joe McMahan, the assistant manager, testified that on the night in question he was the butcher and supervisor of the cold storage locker. His duties included checking the temperature within the locker. McMahan stated that the temperature reading is taken from the center part of the locker and maintained at that point between 30 and 38 degrees. The coldest part of the cooler would be the concrete floor. McMahan said that the temperature range was necessary to protect the meat yet not freeze it. The meat is kept hanging since the top of the locker is warmest and if allowed to lie on the concrete floor it would probably freeze.

Randall Bright and Monroe Davis, the complaining witnesses, were the two young men imprisoned by appellant and another in the locker. Both were employees of the store. Bright testified that appellant and another man approached him in the stock room and asked for some empty boxes. As Bright looked for empty boxes appellant pointed to a box next to the meat locker. Bright went to get the box for them. As he did, the other man grabbed him and pushed him in the meat locker. The two men then ". . . put tape around my mouth, all around my head and then told me to put out my arms and put tape around my arms, around my wrists." Then they made him lie on the concrete floor, removed his belt and tied his feet. Davis, bound in the same manner, was lying on the concrete floor. Bright and Davis both were clad only in short sleeve shirts and pants.

Davis related the same story about appellant and his companion inquiring for empty boxes. As he tried to reach a box next to the meat locker, one of the two men grabbed him by the neck, actually choking him, and pulled him to the floor. The other started taping him. He testified that the bottom of his arms was beginning to be

---

1. The appeal was originally abated so that counsel could be appointed to file a brief for appellant who was determined to be indigent.

frostbitten. "I began to lay on my chest—hold my arms up trying to warm them up a little." His arms were in contact with the concrete floor which he stated was very cold.

The State contends that "[b]ound and gagged as Bright and Davis were, the jury could find that they were exposed to a substantial risk of frost-bite, pneumonia, or any of the other well-known health hazards associated with near-freezing and sub-freezing temperatures hazards clearly meeting the law's definition of serious bodily injury."

The evidence was sufficient for the jury to find a "substantial risk of serious bodily injury." Webster's New International Dictionary (1917) defines "substantial" as "not seeming or imaginary; not illusive; real; true." It is defined in Webster's Seventh New Collegiate Dictionary (1963) as "real, true." McMahan testified that the locker was coldest on the concrete floor. He was asked, "And, if meat was placed on the floor, would that freeze it?" He answered, "Very could, possibly, yes, sir." It is common knowledge that human flesh will freeze. Bright's and Davis' escape is of no consequence. They did not escape with the help of the three men. The method by which they were bound shows appellant's intent to leave them there for an indefinite period of time. The evidence shows that they unsuccessfully attempted to lure Gloria Currie to the same meat locker. It was near closing time and the two young men may not have been discovered. Davis testified that he was "real cold", that he was beginning to feel frostbite in his lower arms. Likewise, it is inconsequential that appellant or his companion did not lock the door. As long as the two were inside the locker bound and tied, the three apparent robbers did not expect them to use the door. It would be unreasonable to believe that if appellant and the other two had completed their apparent mission of robbery, by locking all of the employees in the locker, they would have later released them.

The evidence is sufficient to show that when the two young men were bound and gagged and left on the freezing floor inside the locker there was a substantial risk of serious bodily injury and they were intentionally restrained.

 Next, he complains of the trial court's refusal to grant his motion for mistrial following his objection to certain remarks by the prosecutor. The remarks are as follows:

"I ask you to consider that—I ask you to consider the fact that it could have been filed in County Court as a misdemeanor. But, we brought it to the Grand Jury, and the Grand Jury, based on the evidence we brought before them, found this should be brought as a felony offense in this court."

Following counsel's objection and motion for mistrial, this court instructed the jury that it had previously been charged that any action taken by the grand jury was not evidence and instructed them to disregard the prosecutor's statement. An instruction to disregard jury argument is ordinarily sufficient to cure any error. *Anderson v. State,* 504 S.W.2d 507 (Tex.Cr.App.1974); *Hunnicutt v. State,* 500 S.W.2d 806 (Tex.Cr. App.1973).

The judgment is affirmed.

ROBERTS, Judge, dissenting.

Appellant challenges the sufficiency of the evidence. His basic contention is that there is no evidence to support the allegation that the complaining witness was recklessly exposed to a substantial risk of serious bodily injury. Such element must be proven in order to elevate false imprisonment from its Class B misdemeanor punishment classification to that of a third degree felony. V.T.C.A., Penal Code, Section 20.-02(c).

The record reflects that appellant and two companions entered a Safeway store in Amarillo, Texas, on January 25, 1975. Within the store was a meat cooler in which two store employees were placed by appellant and his companions. Randall Bright, one of the two employees, testified that he was tied up by appellant and placed in the meat cooler. Bright testified that the com-

plaining witness, Monroe Davis, was already tied up and in the meat cooler when the appellant and his companions placed Bright in the meat cooler.

Monroe Davis testified that when he was bound, gagged and placed in the cooler by appellant's companions, he was dressed in blue jeans and a short-sleeved shirt. He was laid on the concrete floor of the cooler, and was beginning to experience discomfort to his arms from the cold before he and Randall Bright were able to extricate themselves. Such extrication occurred approximately ten minutes after Bright was bound and placed in the meat cooler.

Joe Clyde McMahan, assistant manager of the Safeway store, testified that part of his duties included supervising the cold storage locker where the complaining witness and Bright were placed by appellant and his companions. He testified that the temperature range in this locker was usually between 30 to 38 degrees, Fahrenheit. He testified that the floor of the meat locker was concrete and that in his opinion it would be the coldest part of the freezer. He testified that the temperature is taken from a center point in the freezer, and that he tried to keep the meat locker "cold enough and not freeze the meat." He testified that one thermometer measured the uppermost portion of the meat locker and it usually read about 40 to 41 degrees, Fahrenheit; that the 30 to 38 degree Fahrenheit reading came from the center part of the meat locker, but that he had never taken the temperature on the floor.

The State contends that "Bound and gagged as Bright and Davis were, the jury could well find that they were exposed to a substantial risk of frost-bite, pneumonia, or any of the other well-known health hazards associated with near-freezing and sub-freezing temperatures, hazards clearly meeting the law's definition of serious bodily injury."

Section 20.02(c), *supra,* provides:

"An offense under this section is a Class B misdemeanor unless the actor recklessly exposes the victim to a substantial risk of serious bodily injury, in which event it is a felony of the third degree."

V.T.C.A., Penal Code, Section 6.03(c), provides:

"A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint."

V.T.C.A., Penal Code, Section 1.07(34), provides:

" 'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

From the record before me, I cannot say that there was sufficient evidence to support a fact finding that the appellant recklessly exposed the victim to a substantial risk of serious bodily injury. I would be more inclined to hold the evidence sufficient if the pertinent facts were more than that the complaining witness was bound in such a manner that he could escape in ten minutes and put in a meat locker equipped with an inside release mechanism that had a temperature range of 30 degrees to 41 degrees, Fahrenheit. I would also be similarly influenced if the record contained direct evidence that the above pertinent facts constituted a "real" and "true" risk of frostbite instead of revealing a witness prompted to use that term who admitted on cross-examination that his arms weren't frostbitten but were "just real cold." The complaining witness and Bright were able to untie themselves and leave the meat cooler in a matter of minutes. There is no evidence in the record that the appellant or his companions locked the doorway to the meat cooler. There is no direct evidence

indicating that appellant's actions constituted a substantial risk of "serious bodily injury" to the complaining witness, as that term is above defined. A circumstantial evidence charge was given, and under such the jury could have inferred that a substantial risk of serious bodily injury was present. However, from the record, I do not feel that the evidence excludes, to a moral certainty, every other reasonable hypothesis except that of a "substantial risk of serious bodily injury."

While the evidence is sufficient to support a Class B misdemeanor false imprisonment, it is insufficient to support a third degree felony false imprisonment. What happened to the two young men was unfortunate and should not have occurred; appellant can and should be punished for his actions, but I cannot say that the State proved what it pled.

The judgment should be reversed and the cause remanded.