2017 WY 95

**Kale Jackson HURLEY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**S-16-0281**

Supreme Court of Wyoming.

August 23, 2017

Representing Appellant: Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; James B. Peters, Assistant Attorney General. Argument by Mr. Peters.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

FOX, Justice.

[¶1] Kale J. Hurley appeals his conviction for felonious restraint. He contends that the district court abused its discretion when it failed to instruct the jury on the definition of "bodily injury," and that there was insufficient evidence to establish that the unlawful restraint exposed the victim to a risk of serious bodily injury. We affirm.

## ISSUES

[¶2] We rephrase the issues as follows:

1. Did the district court abuse its discretion when it refused to instruct the jury on the definition of "bodily injury?"
2. Was there sufficient evidence to establish the elements of felonious restraint?

## FACTS

[¶3] Kadeen Bingham, the victim in this case, stole a ring from Mr. Hurley. When Mr. Hurley discovered the ring was missing, he contacted Jeremiah Maes, a mutual friend, and offered Mr. Maes $500 to set up a meeting between Mr. Hurley and Mr. Bingham so that Mr. Hurley could recover the stolen ring. Mr. Maes arranged for the meeting to take place in his room at the Arrowhead Motel in Gillette, Wyoming.

[¶4] On April 9, 2015, Mr. Bingham, Jaime Gentry, and Steven Miller went to the motel room, and a short time later Mr. Hurley and two unidentified men arrived. According to Mr. Bingham, Mr. Hurley directed one of his associates to lock the motel room door and remain in front of it, while Mr. Hurley and the other man approached Mr. Bingham. Mr. Bingham stated that he did not believe he was free to leave because the door was locked and one of Mr. Hurley's associates was preventing anyone from leaving by standing in front of the door. After Mr. Bingham told Mr. Hurley that he did not have the ring, Mr. Hurley and the other man beat Mr. Bingham for thirty to forty-five minutes.

[¶5] When Mr. Hurley left the motel room, Ms. Gentry ran out of the room to the motel office and asked the manager on duty to call the police. Officer Stroup of the Gillette Police Department responded to the emergency dispatch call and found Mr. Bingham in the motel room. Officer Stroup testified that Mr. Bingham had been severely beaten, "most of his body was flush red … abrasions [on] his shoulders and chest … a large [ ] hematoma underneath his left eye … [and] lumps along his lower jaw. Mr. Bingham declined medical treatment. Unfortunately for Mr. Bingham, he had an outstanding warrant and Office Stroup took him into custody. Mr. Hurley was later arrested and charged with two counts [1] of felonious restraint in violation of Wyo. Stat. Ann. § 6-2-202(a)(i).

[¶6] At trial, Mr. Hurley requested that an instruction on false imprisonment and an instruction on the statutory definition of "bodily injury" as defined in Wyo. Stat. Ann. § 6-1-104(a)(i) (LexisNexis 2017) be given. Mr. Hurley argued that false imprisonment was a lesser included offense of felonious restraint so it should be included, and that,

> [w]hile there is a question of risk, there is also a question of serious bodily injury, and giving the jury the opportunity to look at [the definition of "bodily injury," and "serious bodily injury"] will allow them to be able to make a better determination as to what element these facts fit into.

The district court allowed the instruction on false imprisonment, but denied the instruction defining "bodily injury." The jury returned a guilty verdict on one count of felonious restraint, and the district court sentenced Mr. Hurley to incarceration for a period of not less than fifteen months nor more than forty-eight months. This appeal followed.

## DISCUSSION

[¶7] Mr. Hurley contends that the district court abused its discretion when it declined to instruct the jury on the term "bodily injury" because without an instruction on "bodily injury," the jury was unable to differentiate between "bodily injury" and "serious bodily injury;" and the instruction was a theory of his defense. Mr. Hurley further argues that there was insufficient evidence to prove he committed the crime of felonious restraint because the unlawful restraint, the locking of the motel room door, was not what exposed Mr. Bingham to serious bodily injury. We find that the district court did not abuse its discretion when it denied the proposed instruction on "bodily injury," and that there was sufficient evidence to convict Mr. Hurley of felonious restraint.

### I. Did the district court abuse its discretion when it refused to instruct the jury on the definition of "bodily injury?"

[¶8] "We review a district court's decision on jury instructions for an abuse of

---

1. The district court determined that the State failed to carry its burden of proof as to the count related to Ms. Gentry and dismissed the charge. That count is not at issue in this appeal.

discretion." *Tingey v. State*, 2017 WY 5, ¶ 40, 387 P.3d 1170, 1181 (Wyo. 2017). District courts have "wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found." *Dennis v. State*, 2013 WY 67, ¶ 36, 302 P.3d 890, 897 (Wyo. 2013) (citations omitted). An incorrect ruling on an instruction must be prejudicial to constitute reversible error. *Dougherty v. State*, 2016 WY 62, ¶ 11, 373 P.3d 427, 431 (Wyo. 2016) (citing *Brown v. State*, 2015 WY 4, ¶ 40, 340 P.3d 1020, 1031 (Wyo. 2015)). "Because the purpose of jury instructions is to provide guidance on the applicable law, prejudice will result when the instructions confuse or mislead the jury." *Id.*

[¶9] The district court instructed the jury that:

> The elements of the crime of Felonious Restraint, as charged in this case, are:
>
> 1. On or about the 9th day of April, 2015,
> 2. In Campbell County, Wyoming,
> 3. The Defendant, Kale J. Hurley,
> 4. Knowingly restrained Kadeen Bingham, unlawfully,
> 5. And did so under circumstances which the Defendant knew exposed Kadeen Bingham to risk of serious bodily injury.
>
> If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.
>
> If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

[¶10] Mr. Hurley requested that the court also instruct the jury on the definition of "bodily injury" as used in Wyo. Stat. Ann. § 6-1-104(a)(i):

> (a) As used in this act, unless otherwise defined:
>
> (i) "Bodily injury" means:
>
> (A) A cut, abrasion, burn or temporary disfigurement;
>
> (B) Physical pain; or

(C) Impairment of the function of a bodily member, organ or mental faculty.

The district court opined that "[t]he problem is giving that instruction is not a necessary element, it's not required anywhere under any of the possible scenarios, and [ ] it would be confusing to the jury." Mr. Hurley asserts that it was error for the district court not to instruct the jury on "bodily injury," because "[w]ithout knowing what 'bodily injury' is defined as, it [was] impossible for the jury to fully understand what the statutes require to constitute 'serious bodily injury.'" Mr. Hurley further argues that because "bodily injury" is a term used within the definition of "serious bodily injury," the jury should have been instructed on the term.

[¶11] A court is not required to instruct the jury on a term that is not an essential element of the crime, nor is it required to give an instruction of a defining term unless it has a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its significance in relation to the factual circumstances. *Wilson v. State*, 14 P.3d 912, 916 (Wyo. 2000). Prejudicial error will not be demonstrated unless the instruction confused or misled the jury with respect to the proper principles of law. *Id.* (citing *Collins v. State*, 854 P.2d 688, 700 (Wyo. 1993); *Lowseth v. State*, 875 P.2d 725, 729 (Wyo. 1994)).

[¶12] The district court properly instructed the jury on the definition of "serious bodily injury," an essential element of the charge against Mr. Hurley. This instruction informed the jury of the level of injury that Mr. Hurley was required to impose upon Mr. Bingham:

> substantial risk of death; causes severe protracted physical pain; causes severe disfigurement or protracted loss or impairment of a bodily function; causes unconsciousness or a concussion resulting in protracted loss or impairment of the function of a bodily member, organ or mental faculty; causes burns of the second or third degree over a significant portion of the body; or causes a significant fracture or break of a bone.

The instruction is sufficiently clear that "serious bodily injury" constitutes more than just a scrape or cut, or physical pain. In the context of the charged offense, the instruction on "bodily injury" is unnecessary, had potential to confuse the jury, and "does not have a technical legal meaning so different from its ordinary meaning that the jury, without further explanation, would misunderstand its significance in relation to the factual circumstances." *Wilson*, 14 P.3d at 916.

[¶13] Mr. Hurley did request and receive an instruction on the lesser included offense of false imprisonment, but "bodily injury" is not an element of that offense: "A person is guilty of false imprisonment if he knowingly and unlawfully restrains another so as to interfere substantially with his liberty." Wyo. Stat. Ann. § 6-2-203(a) (LexisNexis 2017). The instructions on felonious restraint, serious bodily injury, and false imprisonment properly stated the applicable law and included all elements necessary for a jury to determine whether the crime of felonious restraint had been committed.

[¶14] Mr. Hurley argues that the "bodily injury" instruction should have been given because the theory of Mr. Hurley's defense was that his actions constituted simple battery, and did not rise to the level of serious bodily injury as required by felonious restraint. Typically, the failure to give an offered instruction on the law related to a theory of defense is a due process issue, which this Court reviews de novo. *Tingey*, 2017 WY 5, ¶ 27, 387 P.3d at 1178. The instruction however, must be a proper theory of the case, or a theory of defense instruction, and must present a defense recognized by statute or case law in this jurisdiction. *Bouwkamp v. State*, 833 P.2d 486, 490 (Wyo. 1992). "Suggestion of an alternative charge is not a defense to the crime being prosecuted." *Id.* If an instruction is not a theory of defense instruction, the district court's decision to give the instruction is discretionary. *Tingey*, 2017 WY 5, ¶ 40, 387 P.3d at 1181.

[¶15] Mr. Hurley fails to explain how an instruction on the term "bodily injury" equates to his purported theory of the defense, that it was only a battery. He did not request a theory of the defense jury instruc-

tion related to battery, nor did he request one on the elements of the offense of battery. The word "battery" is not used during the trial, and after an in-depth review of the record, we find one statement that even arguably references the "battery" theory made by defense counsel in his closing: "This was a fight in a hotel room. And when you take away everything else, that's all it was." The district court is only required to instruct the jury on a theory of defense if competent evidence exists which supports the law expressed in the instruction, and in this instance, no such evidence existed. The record does not support Mr. Hurley's argument on appeal that his theory of the case at trial was that he had only committed a battery, and the possibility that Mr. Hurley's actions may have supported a different charge is not a defense.

[¶16] Mr. Hurley's proposed jury instruction did not define an essential element of felonious restraint, it was not related to a theory of Mr. Hurley's defense, it did not apply to the circumstances of the case, and the district court correctly concluded that it could confuse the jury. The district court acted within the latitude afforded district courts to tailor instructions to the circumstances of the case, and did not err when it refused to give this proffered instruction. We find no abuse of discretion by the district court in rejecting Mr. Hurley's proposed instruction on the definition of "bodily injury." We turn next to Mr. Hurley's sufficiency of the evidence argument.

## II. Was there sufficient evidence to establish the elements of felonious restraint?

[¶17] When reviewing a sufficiency of the evidence claim, "[W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it." *Dennis*, 2013 WY 67, ¶ 23, 302 P.3d at 895 (quoting *Craft v. State*, 2013 WY 41, ¶ 18, 298 P.3d 825, 830 (Wyo. 2013)). We will not consider conflicting evidence presented by the defendant. *Id.* "We will not reweigh the evidence or re-examine witness credibility." *Jones v. State*, 2017 WY 44, ¶ 34, 393 P.3d 1257, 1265 (Wyo. 2017). We do not

substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. *Id.* at ¶ 34, 393 P.3d at 1264. "This standard applies whether the supporting evidence is direct or circumstantial." *Mraz v. State*, 2016 WY 85, ¶ 18, 378 P.3d 280, 286 (Wyo. 2016) (citations omitted).

[¶18] Mr. Hurley argues that there was insufficient evidence to convict him of felonious restraint. He asserts that the mechanism of the restraint must create the risk of serious bodily injury, and in his case, locking and blocking a motel room door did not create the risk of serious bodily injury. Mr. Hurley's argument requires us to examine Wyoming's felonious restraint statute and apply our customary principles of statutory interpretation. "[C]riminal statutes are to be strictly construed, which means that they are not to be enlarged by implication or extended by inference or construction." *Mraz*, 2016 WY 85, ¶ 71, 378 P.3d at 296 (quoting *Yellowbear v. State*, 2008 WY 4, ¶ 56, 174 P.3d 1270, 1292 (Wyo. 2008)).

> (a) A person is guilty of felonious restraint if he knowingly:
>
> (i) Restrains another unlawfully in circumstances exposing him to risk of serious bodily injury[.]

Wyo. Stat. Ann. § 6-2-202(a)(i). Since its adoption in 1982, this Court has only on rare occasion interpreted the felonious restraint statute. In *Sami v. State*, we found that

> a district court in seeking a factual basis for a guilty plea to felonious restraint can, without more, infer that the victim of restrained, forcible nonconsensual sexual intercourse was subjected to such violence from that particular act that the court could reasonably conclude that she had been *exposed* to a risk of serious bodily injury

2004 WY 23, ¶ 12, 85 P.3d 1014, 1019 (Wyo. 2004) (emphasis in original). In *Williams v. State*, 2002 WY 136, 54 P.3d 248 (Wyo. 2002), we stated that "[t]he felonious restraint statute is violated when a risk of serious bodily injury occurs and the action causing that risk is an unlawful restraint," *Id.* at ¶ 9, 54 P.3d at 250, and held that "the State [must] prove that the accused acted knowingly on each element of the offense." *Id.* at ¶ 10, 54 P.3d at 251. Relying on the statements made in *Williams*, Mr. Hurley argues that this Court recognized that the mechanism of the restraint must also create the risk of serious bodily injury.

[¶19] In *Williams*, we recognized that the statutory language of the felonious restraint statute adopted verbatim the language of the Model Penal Code. *Id.* at ¶ 9, 54 P.3d at 250. Model Penal Code commentary[2] to felonious restraint provides:

> The principal function of Section 212.2 is to deal with unlawful restraint under circumstances exposing the victim to risk of serious bodily injury. ... That the actor unlawfully restrains another under circumstances creating risk of serious harm is sufficient to call for felony sanctions ....
>
> . ....
>
> Specifically, Section 212.2 applies to one who "restrains another unlawfully in circumstances exposing him to risk of serious bodily injury. ..."
>
> The *action giving rise to such risk must amount to unlawful restraint* ....

Model Penal Code and Commentaries Part II § 212.2, cmt. 2, at 240-41 (Am. Law Inst. 1980) (emphasis added). As the commentary conveys, the "unlawful restraint" and the "circumstances exposing him to a risk of serious bodily injury" are two separate elements required to be proven to be convicted of felonious restraint. The restraint must be unlawful, and it must occur in circumstances that expose the victim to a risk of serious bodily injury. It is uncontested that the motel

---

2. In *Dockter v. State*, 2017 WY 63, ¶¶ 12-13, 396 P.3d 405, 408 (Wyo. 2017), we recognized limited application of the Model Penal Code comments and notes to the kidnapping statute due to the fact that when the Wyoming Legislature adopted the kidnapping statute (Wyo. Stat. Ann. § 6-2-201(a)(iii)), it did not use the verbatim language of the Model Penal Code. Instead, the legislature omitted some of the limiting language contained in the Model Penal Code's definition of kidnapping, rendering some of the comments and notes unhelpful. That is not the case with the felonious restraint statute.

room door was locked, unlawfully restraining Mr. Bingham. Absent that restraint, Mr. Bingham would have been free to walk away and would have avoided exposure to risk of serious bodily injury—being punched, kicked, and thrown against a wall by two men. While there very well may be situations where the unlawful restraint is the same mechanism that exposes a victim to serious bodily injury, Wyo. Stat. Ann. § 6-2-202 does not require it.

[¶20] Mr. Hurley relies on two out-of-state cases to support his theory. First, he cites to *State v. Ciullo*, 140 Conn.App. 393, 59 A.3d 293 (2013), *aff'd*, 314 Conn. 28, 100 A.3d 779 (2014). Mr. Ciullo and his neighbor were involved in a dispute over a stone wall and pillars that bordered their two properties when Mr. Ciullo drew a semiautomatic pistol from its holster, chambered a bullet, and pointed toward three people. *Id.* at 298-299. Two of the victims remained still at Mr. Ciullo's command while the third took off running. *Id.* at 299. A jury found Mr. Ciullo guilty of the unlawful restraint of three victims in violation of Conn. Gen. Stat. § 53a-95(a). *Id.* "A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury." *Ciullo*, 59 A.3d at 300 n.2 (citation omitted). On appeal, Mr. Ciullo argued that there was insufficient evidence to support a finding that he restrained any of the victims or that his behavior exposed any of them to a substantial risk of physical injury. *Id.* at 300-01. The appellate court reversed the conviction as to the third victim because even though Mr. Ciullo pointed the gun at her and there was a substantial risk of injury, the victim was never restrained.[3] *Id.* at 302.

[¶21] Mr. Hurley next cites *Taylor v. State*, 550 S.W.2d 695 (Tex. Crim. App. 1977). In *Taylor*, the victims were bound and gagged and left on the freezing floor inside of a meat locker at a Safeway. *Id.* at 697. Mr. Taylor was convicted of false imprisonment,

a third-degree felony, in violation of V.T.C.A. Penal Code Section 20.02(c). *Id.* at 696.

(a) A person commits an offense if he intentionally or knowingly restrains another person.

. . . .

(c) . . . .

. . . .

(2) a felony of the third degree if:

(A) the actor recklessly exposes the victim to a substantial risk of serious bodily injury[.]

V.T.C.A. Penal Code Section 20.02(c) (effective September 1, 2001 to August 31, 2017). On appeal, Mr. Taylor argued that there was insufficient evidence to support his conviction. *Taylor*, 550 S.W.2d at 696. The State contended that "(b)ound and gagged as [the victims] were, the jury could find that they were exposed to a substantial risk of frostbite, pneumonia, or any of the other well-known health hazards associated with near-freezing and sub-freezing temperatures hazards clearly meeting the law's definition of serious bodily injury." *Id.* at 697. The appellate court agreed, finding that "[t]he evidence is sufficient to show that when the two young men were bound and gagged and left on the freezing floor inside the locker there was a substantial risk of serious bodily injury and they were intentionally restrained." *Id.*

[¶22] Close examination of these cases reveals that they do not support Mr. Hurley's argument that the mechanism of the restraint *must* also be the risk. Even though Mr. Ciullo exposed the third victim to the same substantial risk of physical injury as the other two victims by pointing a loaded gun at them, the third victim chose to run away and therefore was not restrained by Mr. Ciullo as required by the statute. Additional Connecticut case law on felonious restraint makes clear that the two elements are separate. *See, e.g., State v. Cotton*, 77 Conn. App. 749, 825 A.2d 189, 205-06 (2003) (evidence was sufficient for the jury to conclude that the defendant *both restrained the vic-*

---

**3.** The definition of the term "restrain" is contained in General Statutes § 53a-91 (1): "'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by mov-

ing him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent . . . ." *Ciullo*, 59 A.3d at 302.

*tim* by departing from the intended course of travel, confining her to the front seat of the car, the location of the car, the victim's visual and mental disabilities, and it was nighttime, *and* that he *exposed her to a substantial risk of physical injury* when he assaulted her in the parking lot). Similarly in *Taylor*, the victims were restrained by being bound and gagged, but it was the sub-freezing temperatures of the freezer that created a substantial risk of serious bodily injury, not the restraint. In both instances, the courts focused on the circumstances surrounding the restraint to determine the exposure to serious bodily injury, not just the unlawful restraint itself. In *Sami*, it was the circumstances surrounding the unlawful restraint, "angrily throwing the victim on a bed, laying on top of her and preventing her from getting up, touching her breast, and then performing nonconsensual sexual intercourse on the unlawfully restrained victim," that the Court focused on when it found that the victim had been "exposed to a risk of serious bodily injury." *Sami*, 2004 WY 23, ¶ 12, 85 P.3d at 1019.

[¶23] In this case, the evidence viewed in the light most favorable to the State shows that Mr. Hurley unlawfully restrained Mr. Bingham in a motel room by locking the door and directing another man to stand in front of the door to prevent Mr. Bingham from leaving. That unlawful restraint exposed Mr. Bingham to a risk of serious bodily injury— being beaten up by Mr. Hurley and his associate. A reasonable jury could have found from these facts that Mr. Bingham was exposed to a risk of serious bodily injury when Mr. Hurley locked the motel room door and subjected Mr. Bingham to a beating.

## CONCLUSION

[¶24] The district court did not abuse its discretion when it rejected Mr. Hurley's proposed instruction on the definition of "bodily injury." The unlawful restraint required under Wyo. Stat. Ann. § 6-2-202(a)(i) need not also be what creates the risk of serious bodily injury, and the evidence was sufficient to sustain Mr. Hurley's conviction. The judg-ment and sentence of the district court are affirmed.