DAVIS, Justice.
[¶1] Tamara Voelker appeals from the judgment and sentence entered after her guilty plea to one count of intentionally exploiting a vulnerable adult.[1] She contests only *1099 the restitution award of $43,821.30 to the gentleman whose resources she depleted, 89-year-old Wallace Reaves. We affirm.
ISSUE
[¶2] Voelker makes a single argument:
The district court erred when it held that the State had met its burden of proving the amount of restitution.
FACTS
[¶3] Upon finding that he was increasingly unable to care for himself, manage his finances, and pay his bills, Reaves initially welcomed the assistance offered by Voelker, whom he considered a friend. She claimed that he occasionally gave her gifts in return. However, by mid-April of 2016, Reaves discovered that she had misappropriated all the funds he had saved for anticipated home health care that would permit him to live out the rest of his life in his own home.
[¶4] He informed his family about his predicament, and after examining his accounts, his daughter-in-law reported the matter to the Casper Police Department. At roughly the same time, the Department of Family Services' testing of Reaves' orientation, memory, and concentration indicated that he might be impaired by dementia.[2] Detective Shannon Daley eventually took charge of the investigation into Voelker's alleged sixteen-month exploitation of Reaves.
[¶5] In the course of her investigation, Detective Daley examined Reaves' checking account with Hilltop National Bank and his credit or debit card accounts with Reliant Federal Credit Union, US Bank, Sears, and American Express. Voelker was able to make purchases through those accounts. Although the detective had mixed success in obtaining additional records from the vendors involved in the purchases, she found several hundred transactions that appeared to exploit Reaves.
[¶6] The nature of a majority of those transactions made it unlikely either that Reaves initiated them or that he benefitted from them. For instance, online purchases predominated, but he lacked both the equipment and knowledge necessary to make them. Well over 100 transactions involved the purchase of e-books, and he did not have a reader for those books and suffered from glaucoma. Nearly 250 charges were made to Jewelry Television for approximately $13,700 worth of jewelry. Over $1,660 was spent on online beauty products. More than $3,500 was spent for utility and communications services at Voelker's address or from providers other than those used by Reaves. Medical service providers other than those he used were paid $2,459, $918 was paid to a different auto insurance company than the one he used, and over $1,470 was charged on credit cards for utilities from providers that he paid by check. In addition, charities were paid $972, and $739 worth of flowers was purchased. During the same period, checks worth over $14,700 were drawn to Voelker on Reaves' account.
[¶7] All in all, Detective Daley concluded that Voelker took advantage of Reaves to obtain $48,471.30 worth of goods and services.[3] Consequently, Voelker was charged with two felonies, theft and the intentional exploitation of a vulnerable adult, for her actions between January 1, 2015, and May 1, 2016.
[¶8] Pursuant to a plea agreement, she eventually pled guilty to the exploitation charge, and the State dismissed the felony theft charge. There was no agreement to the sentence to be imposed, and although Voelker agreed that the court could rely upon Detective Daley's affidavit of probable cause as a factual basis for her plea, she indicated she would nevertheless challenge the State's ability to prove that certain of the transactions mentioned in the affidavit should count toward the total amount of restitution to be ordered.
*1100 [¶9] Only Detective Daley testified to the restitution claim at Voelker's sentencing hearing. The district court accepted the detective's calculation of the amount of restitution owed, including her testimony as to a set-off due to Voelker because of a deposit she made to Reaves' checking account.
[¶10] The court sentenced Voelker to a term of imprisonment of thirty to ninety-six months, and ordered her to pay $43,821.30 in restitution. Voelker timely perfected this appeal.
DISCUSSION
[¶11] On appeal, Voelker somewhat vaguely asserts that the State provided insufficient evidence of portions of the awarded restitution. However, she articulates an arguably cogent rationale against which the district court's allegedly contrary conclusions with respect to a few discrete matters may be evaluated.
[¶12] She points to instances in which Reaves indicated to Detective Daley that at times he had allowed Voelker to purchase flowers, and that at times he had helped her out by giving her money. She suggests that restitution should therefore not be awarded with respect to any flower purchases or for any checks he wrote directly to her.
[¶13] Voelker also suggests that charitable donations made through the use of Reaves' credit cards should not be counted towards restitution. She claims these were tied to her solely because Reaves had no knowledge of many of the donee companies, and because many were set up online to be automatically and recurrently paid through Reaves' accounts.
[¶14] She similarly claims that multiple charges at Walmart within a brief period and two postal services transactions were attributed to her simply because Reaves could not recall what might have been obtained by those purchases. She also asserts that charges to a Classmates Incorporated account were treated as hers without evidence of who owned or used the account, and that $1,800 in cash advances from one of Reaves' credit card accounts were included in restitution she must pay because her treatment of them differed from the way she treated an earlier advance allegedly taken by Reaves.
[¶15] Finally, she asserts that restitution should have been set off by the full amount of a deposit she made to Reaves' checking account, because the prosecutor was the sole source of the allegation that his family returned most of that deposit to her.
[¶16] This Court evaluates such factual challenges to the amount of ordered restitution for a clear abuse of discretion. "Consistent with that standard, we view the evidence as sufficient to support the sentencing court's decision if it affords a reasonable basis for estimating a victim's loss." Smiley v. State , 2018 WY 50, ¶ 13, 417 P.3d 174, 177 (Wyo. 2018) (citing Guinard v. State , 2014 WY 140, ¶ 6, 337 P.3d 426, 428 (Wyo. 2014) ; Frederick v State , 2007 WY 27, ¶¶ 14-15, 151 P.3d 1136, 1141 (Wyo. 2007) ). We view the evidence in the light most favorable to the State, affording it the benefit of every reasonable inference that can be fairly drawn and disregarding any conflicting evidence or interpretations presented by the defendant. Merkison v. State , 996 P.2d 1138, 1142 (Wyo. 2000). We accord equal dignity to circumstantial and direct evidence. Hurley v. State , 2017 WY 95, ¶ 17, 401 P.3d 827, 832 (Wyo. 2017).
[¶17] Voelker would have this Court turn that standard on its head by ignoring the value of circumstantial evidence and the "reasonable basis" test, by examining the evidence and the inferences to be drawn therefrom in a light more favorable to her, and by divorcing individual pieces of proof from evidence that all of her charged conduct occurred while Reaves was impaired.[4]
[¶18] Given Reaves' impairment, one must view her suggestion that his generosity was independent of her exploitation with suspicion. This is particularly so given her post-arrest admission to her adult children that *1101 she took advantage of her knowledge that Reaves would give her anything she asked for, and that she should have stopped before he ran out of money. The checks and the flower purchases alone exceeded $15,000, more than one-third of what it took to break the bank of his retirement savings.
[¶19] As for the charitable donations, Reaves' lack of familiarity with many of the donee organizations is only one factor suggesting that he did not make or authorize those charges. His credit card accounts revealed that no similar charges were made before Voelker had access to those accounts, and many appeared to have been set up online as automatic recurrent payments. As indicated above, Detective Daley testified that Reaves had neither the computer equipment nor the skills to set up those payments.
[¶20] It is also noteworthy that these transactions occurred alongside numerous other transactions, many of which could not have been performed by Reaves and which probably benefitted Voelker. Included are multiple charges to Walmart, two postal services transactions, charges to a Classmates Incorporated account, and $1,800 in cash advances from one of Reaves' credit card accounts.
[¶21] Voelker argues that the State's restitution case turned entirely on Reaves' inability to recall these transactions, and its insistence that she could have made them. However, three Walmart charges totaling over $860 were made in a single day, and the detective testified without objection that Reaves' family could not associate such a large expenditure with any items that he may have obtained during that time frame. Moreover, he told her that he not only had no recall of the postal transactions, but he had no idea what he would have needed to purchase. As for the Classmates Incorporated charges, they related to the use of an online search service, but Reaves had no computer, as we have already noted. Only he and Voelker had access to his credit and checking accounts at the time of these transactions.
[¶22] Reaves also could not recall the $1,800 in cash advances taken in two days from one of his credit card accounts. Voelker claims that Reaves had once been victimized by a telemarketing scam and had taken out such an advance, and she contends that the latest advances may have been similarly motivated and initiated. However, she was the only source of the story about the earlier scam, and failed to explain-given her discovery and report of the matter-how the latest advances escaped her attention if they were not her doing.
[¶23] With respect to Voelker's deposit of funds into Reaves' checking account, it is true that the prosecutor clarified that of the $13,221.58 deposited, his family retained $4,650 and returned the remainder. However, that clarification extended only to the exact amount of money returned and retained. Detective Daley previously testified to the amount of the deposit reflected by the bank's records, that the family closed the account, that they returned all but approximately $4,000 of the deposit, but that they apparently had no receipt for the money returned. All of that testimony reflected what she had uncovered during her investigation.
[¶24] When we view both the direct and circumstantial evidence in the light most favorable to the State and make all reasonable and fair inferences that can be drawn from it, we conclude that this evidence provides a reasonable basis for calculating the amount of restitution, and that it is therefore sufficient to support the district court's findings.
CONCLUSION
[¶25] The district court's judgment and sentence, including the award of restitution, is affirmed.

Wyo. Stat. Ann. § 6-2-507(d) (LexisNexis 2017) makes that crime a felony. Pursuant to subsection (e) of that statute, and by reference to Wyo. Stat. Ann. § 35-20-102(a)(ix)(A) (LexisNexis 2017), "exploitation" includes obtaining control over a vulnerable adult's money, assets or property through deception or undue influence, with the intent of permanently or temporarily depriving that person of the ownership, use, benefit or possession of the same. Under § 35-20-102(a)(xviii), a vulnerable adult is one who is unable to manage and take care of himself or his money, assets, and property without assistance because of advanced age, physical disability, or mental disability.

Nine months later, a physician diagnosed him as suffering from severe dementia.

Reaves' daughter-in-law verified the detective's calculation of restitution for the author of the PSI.

As noted above, skills tests performed when law enforcement first became involved in this case suggested that Reaves suffered from dementia, and nine months later a physician found that dementia to be severe. Voelker's admissions when she changed her plea likewise established that he was mentally vulnerable at all times pertinent to this case.