******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

STATE OF CONNECTICUT *v.* JALENN JACKSON
(AC 39522)

DiPentima, C. J., and Bright and Harper, Js.

*Syllabus*

Convicted of the crime of sexual assault in the first degree, the defendant
appealed to this court. The defendant was originally charged with, inter
alia, the crime of unlawful restraint in the first degree and found not
guilty of that charge by a jury. When the jury deadlocked on three
charges of sexual assault in the first degree, the state elected to retry
the defendant on those charges and the defendant waived his right to
a jury trial. Following a trial to the court, the court rendered a judgment
of guilty of one count of sexual assault in the first degree. On appeal,
the defendant claimed that the trial court improperly and in violation
of the collateral estoppel component of the double jeopardy clause of
the United States constitution admitted into evidence a portion of a
witness' statement to the police, which concerned the defendant's
alleged use of a sweater that was wrapped around the victim's face to
restrain the victim during the sexual assault, that the jury in his first
trial necessarily had rejected when it found the defendant not guilty of
the unlawful restraint charge. The state claimed that the defendant's
double jeopardy claim was not preserved and, thus, not reviewable.
*Held* that the admission of the evidence regarding the use of the sweater
did not violate the defendant's fifth amendment guarantee against double
jeopardy: although the issue was not brought to the attention of the
trial court in the precise manner in which it was raised on appeal,
defense counsel's repeated argument that the defendant had been found
not guilty of unlawful restraint and that any facts from the first trial
that were related to that charge should not be admitted to prove restraint
related to the sexual assault charges in the second trial sufficiently
apprised the court of the nature of the issue so as to preserve it for
appellate review; moreover, a finding of not guilty on the charge of
unlawful restraint and a finding that the witness made a credible state-
ment about the defendant's use of the sweater were not mutually exclu-
sive findings, or in any way inconsistent, in that the jury reasonably
could have believed the witness' statement regarding the sweater but
found that the statement did not establish or demonstrate that the
defendant had the intent to unlawfully restrain the victim, and the defen-
dant failed to demonstrate that the jury, in finding him not guilty of
unlawful restraint in the first trial, necessarily rejected the witness'
statement and necessarily concluded that the sweater was not used
during the sexual assault, as the witness did not tell the police that the
defendant used the sweater to restrict the victim's movements with the
intent to interfere substantially with her liberty, but rather stated that
the defendant used the sweater for the purpose of quieting the victim's
screams after the defendant already had been engaging in sexual inter-
course with her.

Argued April 11—officially released August 28, 2018

*Procedural History*

Information charging the defendant with three counts
of the crime of sexual assault in the first degree, brought
to the Superior Court in the judicial district of Danbury
and tried to the court, *Russo, J.*; judgment of guilty of
one count of sexual assault in the first degree, from
which the defendant appealed to this court. *Affirmed.*

*Erica A. Barber*, assigned counsel, for the appel-
lant (defendant).

*Timothy J. Sugrue*, assistant state's attorney, with
whom, on the brief, were *Stephen J. Sedensky, III,*

state's attorney, and *Colleen P. Zingaro*, assistant
state's attorney, for the appellee (state).

*Opinion*

BRIGHT, J. The defendant, Jalenn Jackson, appeals from the judgment of conviction, rendered after a trial to the court, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1).[1] The defendant claims that the trial court improperly and in violation of the collateral estoppel component of the double jeopardy clause of the United States constitution[2] admitted into evidence a portion of a witness' statement that the jury in his previous trial necessarily had rejected when it found the defendant not guilty on the charge of unlawful restraint. We affirm the judgment of the trial court.

The defendant originally was charged, via long form information dated March 10, 2015, with: three counts of sexual assault in the first degree in violation of § 53a-70 for digital, oral, and penile penetration of the victim without her consent and with the use of force; one count of sexual assault in the first degree as an accessory in violation of General Statutes §§ 53a-8 and 53a-70; one count of unlawful restraint in the first degree in violation of General Statutes § 53a-95, which was based on the state's theory that the defendant had restrained the victim with a sweater during the act of penile-vaginal intercourse; and one count of burglary in the third degree in violation of General Statutes § 53a-103. Following a trial, the jury deadlocked on the three charges of sexual assault in the first degree, and it found the defendant not guilty of the remaining three charges. The state elected to retry the defendant on the three charges of sexual assault in the first degree. The defendant waived his right to be tried by a jury and his case, instead, was tried to the court, *Russo, J.*

The following facts, as set forth by the trial court in its oral decision or as reasonably revealed by the evidence in the record, inform our review. Beginning in March, 2013, the victim,[3] who was from New York, began staying with her friend, A, in Danbury. On the evening of April 25, 2013, the victim and A went to a club in Danbury, where the victim became intoxicated. When the club closed, the victim went to look for A, but could not find her. She waited by the door to the club and began to cry. The defendant, Dylan Kennedy and two other men were riding in a vehicle in the area of the club looking for women with whom they could talk. The men saw the victim and parked alongside the sidewalk near where she was standing. One of the men began speaking to the victim. The victim told them that she could not find A. Soon thereafter, the victim got into the vehicle and went with the men with the intention of finding A, who the men said had gone to a party. The men drove the victim to the party, but by the time they arrived at the purported location of the party on Chestnut Street, the party had broken up. The other two men drove away in the car, so the defendant, Ken-

nedy and the victim walked to the Harambee Center (center), where the defendant and Kennedy sometimes slept. The victim thought the men were being helpful, and she was not concerned about her safety because she thought they were gay. The building was dark when they went inside. The men and the victim played basketball for a while. The defendant was complimenting the victim and "hitting on [her]." The three then went to a room on the second floor of the center, where they sat on two couches.

The defendant caressed the victim's leg, unzipped her pants and aggressively put his hands down her pants and digitally penetrated her vagina. The victim attempted to rebuff the defendant's advances and told him that she felt sick. Nevertheless, the defendant removed the victim's pants and performed oral sex on her, pulling her legs open. Kennedy then approached the defendant and the victim, and he began kissing the victim. The defendant, while positioned face to face on top of the victim, inserted his penis into her vagina. The victim told the defendant "no, I don't want to do this, I don't want to do this, I don't want to do this, no, I shouldn't do this, I don't want to do this." She also told him "it [is] hurting, please stop . . . ." The victim then told the defendant she was going to "puke," and the defendant responded by telling the victim to turn around so he could position himself behind her while vaginally penetrating her. Although the victim complied, she was crying and screaming for him to stop, to no avail. She lost consciousness or awareness soon thereafter.

Despite the victim's testimony that she lost consciousness, Kennedy stated to the police[4] that the victim continued to scream and cry when the defendant took her from behind, and that, to help muffle the victim's screams and to try to keep her quiet, the defendant then wrapped a sweater around her face and pulled tightly, jerking her head back, as she was struggling while the defendant continued to penetrate her. Kennedy also told the police that he did not "want to throw [the defendant] under the bus. . . . He's my good friend." Nevertheless, he stated that the defendant "like, you know, force[d] his way. . . . He pretty much made [the victim] have sex with him. . . . [H]e got on top of her and stuff, started kissing her, and she was . . . saying no. . . . No. No. No. . . . [He] started kissing her neck and stuff and then she was saying no, no, and then he proceeded to take off her pants." When the police asked Kennedy about marks on the victim, he told them that the defendant "gave her a hickey," and that "he was biting her." Kennedy also conceded that the victim was telling the defendant to stop because it hurt.

In the morning, the victim awoke in the center, naked, with the sweater still wrapped around her face. She

scrambled to find her clothes and got dressed, putting the sweater over her clothes. She ran down the stairs of the center and found her way to A's apartment, where she reported to A what had occurred. The victim went to the hospital and reported that she had been sexually assaulted. Thereafter, Kennedy and the defendant were arrested.[5]

At the conclusion of his first trial, the jury had deadlocked on the three charges of sexual assault in the first degree, and it had found the defendant not guilty of the remaining three charges. The state then elected to retry the defendant on the three charges of sexual assault in the first degree. Following a trial to the court, the court, relying in significant part on the similarity it found between this case and *State* v. *Rothenberg*, 195 Conn. 253, 487 A.2d 545 (1985), rendered a judgment of conviction on one count of sexual assault in the first degree based on the defendant's use of force to compel the victim to engage in penile-vaginal intercourse. The court rendered a judgment of acquittal on the charges of sexual assault in the first degree that were based on the defendant's digital and oral penetration of the victim. This appeal followed.

In his appellate brief, the defendant sets forth, as the "sole issue presented on appeal . . . whether the doctrine of collateral estoppel, as embodied in the fifth amendment [to the United States constitution] guarantee against double jeopardy, and as set forth in *State* v. *Aparo*, 223 Conn. 384, [614 A.2d 401] (1992), [cert. denied, 507 U.S. 972, 113 S. Ct. 1414, 1415, 122 L. Ed. 2d 785 (1993)], barred the trial court from considering and relying upon certain allegations of fact that the state failed to establish in the first trial to find [the defendant] guilty in the second trial, namely that the defendant had restrained [the victim] with a sweater during the alleged sexual assaults." He claims: "When a jury [found] the defendant [not guilty] of unlawful restraint, but failed to reach a verdict on other counts, and it is clear from the record that the jury had a reasonable doubt about certain ultimate facts relating to the [unlawful restraint] count, the doctrine of collateral estoppel prohibits the trial court from considering and relying on those facts to find the defendant guilty on one of the hung counts in a subsequent trial."[6] Additionally, the defendant argues: "The trial court's reliance on the restraint evidence rejected by the defendant's jury in the first trial to find him guilty of sexual assault in the second trial constitutes reversible legal error."[7]

The state argues that the defendant's double jeopardy claim is waived and unreviewable.[8] It contends that defense counsel never argued double jeopardy, collateral estoppel, or the principles articulated in *Aparo* before the trial court, and that counsel and the court all considered the defendant's motion as an objection to certain testimony that was based on evidentiary prin-

ciples related to relevance and prejudice. Furthermore, the state argues that it would amount to ambuscade to consider this claim under the double jeopardy clause when the trial court never had the opportunity to do so. In the alternative, the state argues that, even if the claim is reviewable, there was no double jeopardy violation in this case. We conclude that the defendant's claim is reviewable, and, after reviewing the merits of the claim, we further conclude that there was no double jeopardy violation in this case.

The following additional facts are relevant to our consideration of the state's waiver argument. In the defendant's first trial, the prosecutor, in relevant part, argued that the defendant "used the sweater to . . . restrain [the victim] and also sexually assault her [as] . . . she was struggling with it, trying to get it off her face, trying to escape from that situation . . . ." The prosecutor asked the jury: "Was that restraining her? . . . Did that create a substantial risk of injury to her at that time? Did it restrain her movement?" To counter this argument, during closing, defense counsel argued in relevant part that the defendant had used the sweater only "to keep [the victim] quiet, not to restrain her." Ultimately, the jury found the defendant not guilty of unlawful restraint. It deadlocked, however, on the forcible sexual assault charges.

In the second trial, the defendant filed a motion in limine objecting, inter alia, to the introduction of evidence suggesting unlawful restraint on the ground that the jury had found him not guilty of that charge, and evidence thereof could confuse or prejudice the trier of fact in the second trial. The state objected on the ground that evidence of restraint was relevant to the charges of sexual assault in the first degree and that the defendant's motion was overbroad. During oral argument on the motion, defense counsel argued, in relevant part, that any evidence that the defendant used the sweater to unlawfully restrain the victim should be excluded. The court asked defense counsel why this would not be just a matter of relevance, and counsel responded that it would depend on the questions asked. The court stated that it would not be inclined to issue a blanket order and that it would need to hear the questions, as would defense counsel, before ruling on the admissibility of the evidence. Defense counsel responded: "That's right." After further discussion between the court and the prosecutor, defense counsel stated: "Your Honor, my main concern is the restraining somebody. If the defendant had not been specifically charged with unlawful restraint and found not guilty of that charge . . . I might feel a little bit different about evidence of restraining somebody during a sexual assault, but he—that evidence . . . was presented, and he was specifically found not guilty of unlawful restraint, and I would have a strong objection . . . an absolute objection to any evidence of restraint coming

in." The prosecutor responded that the issue of restraint was relevant to the sexual assault and to the force used in committing the assault. The court asked defense counsel if she had discussed with the prosecutor the overbroadness and lack of specificity in the defendant's written motion, and counsel replied in the negative. The court stated, "as presently written, I'll deny the motion in limine filed by the defendant . . . ." The court further stated that it would use a relevancy test when the defendant voiced an objection to questions regarding restraint.

Then, during Kennedy's testimony, the prosecutor asked him what he had told the police regarding whether the sweater had been used during the sexual encounter, and defense counsel objected by arguing, "it goes directly to the issues I raised in my motion in limine. . . . [It] [s]hows unlawful restraint, and he was found not guilty." The prosecutor responded that the information went to the issue of force used in the sexual assault. The court stated that the prosecutor was asking what role the sweater played in the assault, and that there already had been testimony regarding the sweater.[9] The following brief colloquy then immediately took place:

"[Defense Counsel]: About a . . . sweater being over her face.

"The Court: Yes, well, or in general.

"[Defense Counsel]: That's something different.

"The Court: There's been testimony on several levels, even exhibits that were taken out of their bags . . . . So—

"[Defense Counsel]: Right.

"The Court: —I'm going to allow the question if Mr. Kennedy can answer it." No further relevant objections related to this issue were offered.

Although we acknowledge that this issue was not brought to the attention of the trial court in the precise manner in which it is raised on appeal, we conclude that defense counsel's repeated argument that the defendant had been found not guilty of unlawful restraint and that any facts from the first trial that were related to that charge should not be admitted to prove restraint related to the sexual assault charges in the defendant's second trial sufficiently apprised the trial court of the nature of the issue so as to preserve the issue for appellate review. Accordingly, we next consider the merits of the defendant's claim.

On appeal, the defendant contends that in his second trial, "the court concluded that the restraint evidence established the element of 'forced sexual intercourse' to find [the defendant] guilty of sexual assault." He argues that because the state's theory at the first trial was that the defendant used the sweater to commit the

act of unlawful restraint, "when it is clear from the record and the jury's verdict that [the jury] had a reasonable doubt about the acquitted act of restraint, the doctrine of collateral estoppel prohibits the court from considering and relying on the restraint evidence to find him guilty [of forcible sexual assault] in the second trial." We are not persuaded by the defendant's argument.

In *State* v. *Hope*, 215 Conn. 570, 577 A.2d 1000 (1990), cert. denied, 498 U.S. 1089, 111 S. Ct. 968, 112 L. Ed. 2d 1054 (1991), our Supreme Court discussed in some detail the relationship between double jeopardy and collateral estoppel. "In a criminal case, collateral estoppel is a protection included in the fifth amendment guarantee against double jeopardy. *Ashe* v. *Swenson*, 397 U.S. 436, 445, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970). ' "Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.' Id., 443. 'Collateral estoppel applies in two ways: (1) it may bar prosecution or argumentation of facts necessarily established in a prior proceeding; or (2) it may completely bar subsequent prosecution where one of the facts necessarily determined in the former trial is an essential element of the conviction the government seeks. *United States* v. *Griggs*, 735 F.2d 1318 (11th Cir. 1984).' *United States* v. *DeMarco*, 791 F.2d 833, 836 (11th Cir. 1986).

"To establish whether collateral estoppel applies, the court must determine what facts were necessarily determined in the first trial, and must then assess whether the government is attempting to relitigate those facts in the second proceeding. *De La Rosa* v. *Lynaugh*, 817 F.2d 259, 263 (5th Cir. 1987); *United States* v. *Irvin*, 787 F.2d 1506, 1515 (11th Cir. 1986). 'A defendant who argues that *Ashe* is applicable to his case carries the burden of establishing that the issue he seeks to foreclose from consideration in the second case was "necessarily" resolved in his favor in the prior proceeding. *United States* v. *Seijo*, 537 F.2d 694, 697 (2d Cir. 1976), cert. denied, 429 U.S. 1043, 97 S. Ct. 745, 50 L. Ed. 2d 756 (1977).' *United States* v. *Castro*, 629 F.2d 456, 465 (7th Cir. 1980). . . .

" 'The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and con-

clude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." The inquiry "must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings." *Sealfon* v. *United States*, 332 U.S. 575, 579 [68 S. Ct. 237, 98 L. Ed. 180 (1948)]. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal.' *Ashe* v. *Swenson*, supra, [397 U.S.] 444.

" 'Moreover, in reviewing the earlier trial to determine the jury's basis for the acquittal, a court "should not strain to dream up hypertechnical and unrealistic grounds on which the previous verdict might conceivably have rested." *United States* v. *Jacobson*, 547 F.2d 21, 23 (2d Cir. 1976), cert. denied, 430 U.S. 946, 97 S. Ct. 1581, 51 L. Ed. 2d 793 (1977). See also *United States* v. *Mespoulede*, [597 F.2d 329, 333 (2d Cir. 1979)]. " '[U]nrealistic and artificial speculation about some far-fetched theory upon which the jury might have based its verdict of acquittal' is foreclosed." *State* v. *Edwards*, 310 N.C. 142, 145, 310 S.E.2d 610, 613 (1984), quoting *United States* v. *Sousley*, 453 F. Supp. 754, 762 (W.D. Mo. 1978).' *Ferrell* v. *State*, 318 Md. 235, 245–46, 567 A.2d 937 (1990); see *United States* v. *Mespoulede*, supra. Limited ambiguity that exists in a jury's verdict should be 'resolved, in accordance with the protections of the Double Jeopardy Clause, in favor of the defendant.' *United States* v. *Hans*, 548 F. [Supp.] 1119, 1126 (S.D. Ohio 1982)." (Citation omitted.) *State* v. *Hope*, supra, 215 Conn. 584–86; accord *State* v. *Aparo*, supra, 223 Conn. 389–90.

Stated more directly: "Collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . . In a criminal context, the doctrine prohibits the government from forcing a defendant to defend against charges or allegations which he overcame in an earlier trial. . . . For estoppel to apply, the fact sought to be foreclosed by [the] defendant must *necessarily* have been determined in his favor in the prior trial; it is not enough that the fact *may* have been determined in the former trial. . . . The defendant has the burden of showing that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." (Citations omitted; emphasis altered; internal quotation marks omitted.) *State* v. *Aparo*, supra, 223 Conn. 406.

Here, at the defendant's first trial, he, in part, was charged with and acquitted of unlawful restraint in the first degree. To prove that crime beyond a reasonable doubt, the state was required to establish that the defen-

dant restrained the victim under circumstances that exposed her to a substantial risk of physical injury. See General Statutes § 53a-95; *State* v. *Ciullo*, 140 Conn. App. 393, 400, 59 A.3d 293 (2013), aff'd, 314 Conn. 28, 100 A.3d 779 (2014). "[N]o actual physical harm must be demonstrated; the state need only prove that the defendant exposed the victim to a substantial risk of physical injury." (Internal quotation marks omitted.) *State* v. *Ciullo*, supra, 400.

The defendant argues that whether he "actually restrained" the victim "was the central issue in dispute at [his first] trial." He contends: "If the jury had believed that the defendant wrapped a sweater around [the victim's] face, 'pulled [it] tight' and jerked her head back, and used the sweater to muffle her screams as he engaged in sexual intercourse with her for five to ten minutes as she struggled to pull him off of her, then, under the court's instructions, it would have been required to convict the defendant of unlawful restraint." We disagree with this contention.

The crime of unlawful restraint in the first degree is set forth in § 53a-95, which provides in relevant part: "(a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury. . . ." The definition of restrain is set forth in General Statutes § 53a-91 (1), which provides in relevant part: " 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by . . . confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. . . ."

Unlawful restraint in the first degree is a specific intent crime. See *State* v. *Salamon*, 287 Conn. 509, 542 n.28, 570, 949 A.2d 1092 (2008); *State* v. *Youngs*, 97 Conn. App. 348, 363, 904 A.2d 1240, cert. denied, 280 Conn. 930, 909 A.2d 959 (2006). A jury cannot find a "defendant guilty of unlawful restraint unless it first [finds] that he . . . restricted the victim's movements with the intent to interfere substantially with her liberty." *State* v. *Salamon*, supra, 573. "[A] restraint is unlawful *if, and only if*, a defendant's *conscious objective in . . . confining the victim is* to achieve that prohibited result, namely, *to restrict the victim's movements in such a manner as to interfere substantially with his or her liberty*." (Emphasis added.) Id., 543 n.28.

The only evidence presented by the state at the defendant's trials regarding the use of the sweater during the penile-vaginal sexual assault was Kennedy's statement to the police. The jury at the first trial reasonably could have believed the whole of that statement and, yet, found that the defendant's *specific intent* in using the sweater was to keep the victim quiet and to muffle her

cries, rather than to confine the victim in an effort to interfere substantially with her liberty. Kennedy admitted to the police that the victim was screaming, that she "obviously" was scared, and that likely she did not want the situation to escalate. Kennedy told the police that the defendant engaged in penile-vaginal intercourse with the victim from behind her; specifically, Kennedy told the police that, while the defendant was positioned behind the victim, "he was penetrating her . . . [v]aginally." Kennedy then stated that the defendant *then* "grabbed the sweater [that was on] the couch, put it around her face and pulled tight," in an effort to muffle her screams and keep her quiet.

Kennedy's statement indicated that the forced sexual assault already was in progress, as illustrated by his statement to the police that the victim was crying and screaming, *before* the defendant took the sweater from the couch and wrapped it around the victim's face in an effort to muffle those screams and cries. There is no indication that the jury *necessarily* decided that Kennedy's statement was not credible regarding the use of the sweater simply because it concluded that the state failed to establish one or more of the elements of unlawful restraint. Kennedy did not tell the police that the defendant used the sweater to restrict her movements with the intent to interfere substantially with her liberty; rather, he told the police that the defendant used the sweater for the purpose of quieting and muffling the victim's screams, *after* the defendant already had been engaging in intercourse with the victim, while the victim was screaming and crying.

In fact, defense counsel seized upon this very detail of Kennedy's statement in arguing for acquittal. During closing argument at the defendant's first trial, defense counsel, herself, argued in relevant part that if the defendant had used the sweater as described by Kennedy, he did so only "to keep [the victim] quiet, not to restrain her." The jury certainly could have agreed with defense counsel's argument even if it also fully credited Kennedy's statement to the police regarding the defendant's use of the sweater.

In sum, a finding of not guilty on the charge of unlawful restraint and a finding that Kennedy made a credible statement to the police about the defendant's use of the sweater were not mutually exclusive findings, or in any way inconsistent. The jury reasonably could have believed Kennedy's statement regarding the sweater, but found that the statement did not establish or demonstrate that the defendant had the intent to unlawfully restrain the victim. Therefore, the defendant's argument that the jury would have been required to convict the defendant of unlawful restraint if it believed Kennedy's statement to the police regarding the defendant's use of the sweater is without merit, and this claim fails the first prong of the *Aparo* test.[10] The defendant has failed

to demonstrate that the jury, in finding the defendant not guilty of unlawful restraint in the first trial, *necessarily* rejected Kennedy's statement to the police, and necessarily concluded that the sweater was not used during the sexual assault. See *State* v. *Aparo*, supra, 223 Conn. 406 ("For estoppel to apply, the fact sought to be foreclosed by [the] defendant must necessarily have been determined in his favor in the prior trial . . . . The defendant has the burden of showing that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." [Citation omitted; internal quotation marks omitted.]); see also *Dowling* v. *Finley Associates, Inc.*, 248 Conn. 364, 377, 727 A.2d 1245 (1999) ("[w]here there is more than one possible reason for the jury's verdict, and the court . . . cannot say that any one is necessarily inherent in the verdict, the doctrine of collateral estoppel is inapplicable . . . ." [internal quotation marks omitted]). Consequently, we conclude that the admission of evidence regarding the use of the sweater did not violate the defendant's fifth amendment guarantee against double jeopardy.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The court rendered a judgment of acquittal on two additional charges of sexual assault in the first degree in violation of § 53a-70 (a) (1).

[2] The parties use the term "collateral estoppel" throughout their appellate briefs. Previous case law also has employed this term when addressing claims similar to the one being made by the defendant. We observe, however, that the United States Supreme Court recently determined that " 'issue preclusion' is the more descriptive term" for such claims. *Bravo-Fernandez* v. *United States*, U.S. , 137 S. Ct. 352, 356 n.1, 196 L. Ed. 2d 242 (2016), citing *Yeager* v. *United States*, 557 U.S. 110, 120, n.4, 129 S. Ct. 2360, 174 L. Ed. 2d 78 (2009), and 1 Restatement (Second), Judgments § 27, comment (b), pp. 251–52 (1980). Nevertheless, although we recognize that "issue preclusion" is now the preferred term of the United States Supreme Court, because of our prior precedent and the parties' arguments, we use the term "collateral estoppel" in this opinion.

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[4] Kennedy's statement to the police was admitted into evidence for substantive purposes at both trials pursuant to *State* v. *Whelan*, 200 Conn. 743, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986). Although the defendant objected to the admission of the statement at his second trial, he does not challenge on appeal the trial court's decision overruling his objection and admitting the statement.

[5] The record reveals that Kennedy pleaded guilty to sexual assault in the first degree and received a sentence of twenty years incarceration, execution suspended after ten years, with ten years of probation.

[6] The crime of unlawful restraint in the first degree is set forth in § 53a-95, which provides: "(a) A person is guilty of unlawful restraint in the first degree when he restrains another person under circumstances which expose such other person to a substantial risk of physical injury.

"(b) Unlawful restraint in the first degree is a class D felony."

The definition of restrain is set forth in General Statutes § 53a-91 (1), which provides: " 'Restrain' means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty by moving him from one place to another, or by confining him either in the place where the restriction commences or in a place to which he has been moved, without consent. As used herein 'without consent' means, but is not limited to, (A) deception and (B) any means whatever, including acquiescence of the victim, if he is a child less than sixteen years old or an incompetent person and the parent, guardian or other person or

institution having lawful control or custody of him has not acquiesced in the movement or confinement."

[7] This statement reflects the underlying assumption of the defendant's argument that evidence of the sweater's use during the sexual assault can have no purpose other than to prove restraint. As set forth more fully in this opinion, that assumption takes too narrow a view of the evidence. In fact, the trial court's oral decision reflects that the court considered the sweater as evidence that the defendant was trying to muffle the victim's cries and screams. The court also found, on the basis of the evidence, that the victim was crying before the defendant employed the sweater. Thus, contrary to the defendant's suggestion, the trial court did not rely on the sweater as "restraint evidence" to find the defendant guilty of sexual assault in the first degree.

[8] The defendant asserts that his claim is preserved, and, in the event that we determine otherwise, he requests review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

[9] The victim already had testified, without objection, that when she awoke in the morning, the sweater was wrapped around her face. The sweater also had been admitted into evidence, without objection.

[10] Having concluded that the defendant failed to establish the first prong of *Aparo*, we need not consider the second prong.